**GREENVILLE SURGERY CENTER, LTD., Appellant,**

v.

**Walter BEEBE, M.D., C. Bradley Bowman, M.D., Ronald L. Fellman, M.D., Henry Gelender, M.D., David G. Godfrey, M.D., Tyrone L. McCall, M.D., David Stager, Jr., M.D., David Stager, Sr., M.D., and Richard J. Starita, M.D., Appellees.**

No. 05–08–01045–CV.

Court of Appeals of Texas, Dallas.

July 9, 2010.

Rehearing Overruled Sept. 15, 2010.

Scott P. Stolley, Carie Dawn Martin Jones, Richard B. Phillips, Jr., Thompson & Knight, LLP, Dallas, TX, Jennifer Pettijohn Henry, Attorney at Law, Fort Worth, TX, for Appellant.

Stuart M. Reynolds, Jr., Schneider & Miller, P.C., Richardson, TX, David Fowler Johnson, Winstead, Sechrest & Minick, P.C., Fort Worth, TX, and William G. Arnot III, Houston, TX, for Appellees.

Before Justices BRIDGES, LANG and LANG–MIERS.

## OPINION

Opinion By Justice BRIDGES.

Appellant Greenville Surgery Center, Ltd. ("GSC") appeals the trial court's decision granting appellees' ("Doctors") motion for summary judgment and denying GSC's cross-motion for partial summary judgment. We affirm.

### Background

GSC owns and operates an ophthalmology surgery center in Dallas. The Doctors are nine of seventeen physicians invested in GSC as limited partners. GSC's general partner is Greenville Surgery Center, Inc.

The partnership was evidenced by the Amended and Restated Certificate and Agreement of Limited Partnership of Greenville Surgery Center, Ltd. ("LP Agreement") executed on September 30, 1985 and amended from time-to-time thereafter. The LP Agreement contained a covenant not to compete that barred the limited partners from owning an interest in a competing facility while being a limited partner at GSC.

On January 5, 2006, the LP agreement was amended by the Eighth Amendment, which modified the covenant not to compete. Section 16.2 of the LP Agreement, as amended by the Eighth Amendment, provides as follows:

16.2.1 *Covenants of Limited Partners.* A Limited Partner (except for the General Partner or its affiliates who hold one or more Units) shall not serve and, in the case of an Entity Limited Partner, shall cause each of its Physician Interest Holders not to serve as an officer, director or employee or consultant of, or hold or acquire any direct or indirect ownership interest in, or manage, lease, develop or otherwise have any financial interest in any business or entity (through a corporation, partnership, trust or other entity in which the Limited Partner or Physician Interest Holder, owns or has a beneficial interest, or through the Limited Partner's or Physician Interest Holder's spouse or children under the age of 25 or through a shareholder, partner, member or other (direct or indirect) equity owner of an Entity Limited Partner) competing with the Partnership in the development, management or operation of an outpatient surgical care facility within a ten-mile radius of the Center from the date of his admission as a Limited Partner and extending to the date two years after the date he is no longer a Limited Partner or Physician Interest Holder (provided

that in no event shall such period be less than five years following the date a Limited Partner is admitted to the Partnership); provided, however, that no Limited Partner or Physician Interest Holder shall be prevented from (i) serving as a member of the Board of Trustees or medical staff, or holding any position other than medical staff, of any hospital; (ii) performing outpatient surgery in his office or in any other location he may desire at any time; or (iii) owing less than 1% of the voting stock of a publicly-held company which owns or operates one or more healthcare facilities.

In early 2007, the Doctors began discussing a new facility in anticipation of the GSC building's lease expiration. By October of 2007, the Doctors entered into a contract for the purchase of land located 1.5 miles from GSC's surgery center. The building of the new center would take eighteen months and the Doctors intended to stay on with GSC during that time.

GSC requested to be a part of the new venture, but the Doctors denied its request and on March 5, 2008, GSC's lawyer threatened the Doctors with a lawsuit, alleging that the Doctors were in violation of the covenant not to compete in the LP Agreement. The Doctors filed suit, seeking a declaration that the covenant not to compete was unenforceable. The Doctors also sought injunctive relief, requesting the trial court enjoin GSC from interfering with their efforts to build a new center. After an evidentiary hearing, the trial court denied the injunctive relief, but stated it did not believe the covenant not to compete was enforceable.

GSC counterclaimed for breach of contract.

Thereafter, the Doctors filed a traditional motion for summary judgment and GSC filed a traditional cross-motion for partial

summary judgment. The trial court granted the Doctor's motion for summary judgment and denied GSC's cross-motion for partial summary judgment. This appeal ensued.

## Standard of Review

The standards for reviewing a traditional summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Further, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on those grounds alone. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 688 (Tex. App.-Dallas 2000, no pet.).

When both parties move for summary judgment, each party must carry its own burden as the movant. *Dallas County Community College Dist. v. Bolton*, 185 S.W.3d 868, 871 (Tex.2005). The court may consider all of the summary judgment evidence filed by either party. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997).

We must affirm the summary judgment if any one of the movant's theories has merit. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237 (Tex.2001).

## Analysis

GSC raises four issues for our consideration. First, GSC contends the trial court erred in concluding the covenant not to compete was not supported by adequate consideration. Second, GSC argues the trial court erred in holding that section 15.50(b) of the Texas business and commerce code applies to the covenant not to compete between GSC and the Doctors. Next, GSC alleges the trial court erred in granting the Doctor's motion for summary judgment. Finally, GSC contends the covenant not to compete meets the requirements of section 15.50(a) of the Texas business and commerce code and, therefore, the trial court erred in denying GSC's motion for partial summary judgment.

We first turn to GSC's second issue, whether the trial court erred in holding that section 15.50(b) of the Texas business and commerce code applies to the covenant not to compete between GSC and the Doctors.

Section 15.50(b) provides, in pertinent part, as follows:

> (b) A covenant not to compete is enforceable against a person licensed as a physician by the Texas State Board of Medical Examiners if such covenant complies with the following requirements:
>
> . . .
>
> (2) the covenant must provide for a buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties; . . . .

GSC contends that section 15.50(b) was not meant to apply to the covenant in this case because the covenant at issue does

not affect the Doctors' practice of medicine. We disagree.

Statutory construction is a legal question reviewed de novo. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008). We must construe a statute, first, by looking to the plain and common meaning of the statute's words. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *Id.* at 865. Further, if a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create an ambiguity. *Id.* at 866.

Section 15.50(b) outlines the situations in which a covenant not to compete is enforceable against a person licensed as a physician by the Texas State Board of Medical Examiners. Here, the record demonstrates the Doctors are licensed physicians. Section 15.50(b)(2) requires the covenant to include a buy-out provision if the covenant is to be enforceable against a physician. Tex. Bus. & Com.Code Ann. § 15.50(b)(2). This buy-out clause requirement provides physicians with the unique opportunity to buy out their covenants that is not available to any other employee subject to a covenant. *See* Mike Kreager, *The Physician's Right in § 15.50(b) to Buy Out a Covenant Not to Compete in Texas,* 61 Baylor L.Rev. 357, 419 (Spring 2009). The covenant before us, however, contains no buy-out clause as required by section 15.50(b)(2). Therefore, the covenant is unenforceable against the Doctors. *See Gulf Coast Cardiology Group, P.A., v. Samman,* No. 09–02–009–CV, 2002 WL 1877175 (Tex.App.-Beaumont Aug. 15, 2002, pet. denied) (covenant not to compete unenforceable since it did not contain a buy-out provision).

Based on our review of plain language of the statute and the covenant not to compete in this case, we conclude the trial court properly applied section 15.50(b) in this case. We, therefore, overrule appellant's second issue on appeal.

In light of our decision regarding appellant's second issue, we need not address appellant's remaining issues. *See Dow Chemical Co.,* 46 S.W.3d 237. We affirm the judgment of the trial court.